**Dorothy DONNER, Plaintiff,**

**v.**

**Jo Anne BARNHART,[1] Commissioner of the Social Security Administration, Defendant.**

**No. CIV.A. H–01–738.**

United States District Court,
S.D. Texas,
Houston Division.

March 19, 2002.

---

1. Jo Anne B. Barnhart became Commissioner of Social Security on November 9, 2001. Under 42 U.S.C. § 405(g), JoAnne B. Barnhart is substituted as the defendant in this case and no further proceedings are necessary to continue this civil action.

Mary Ellen Felps, Attorney at Law, Austin, TX, for plaintiff.

Gregory White, Social Security Admin., Dallas, TX, for defendant.

### MEMORANDUM AND ORDER

HOYT, District Judge.

Having conducted a review of the Memorandum and Recommendations (Entry # 13), as well as all other materials on file in this proceeding and noting that no Objections to the Memorandum and Recommendations have been filed, this Court finds that the Memorandum and Recommendations are well founded and are herein adopted in full. It is, therefore,

**ORDERED** that the Plaintiff's Motion for Summary Judgment (Entry # 11) is **DENIED.** Further, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Entry # 12) is **GRANTED.** Additionally, it is

**ORDERED** that this matter is **DISMISSED with prejudice** from the dockets of this Court.

The Clerk of Court shall file this Memorandum and Order and provide the parties with a true copy.

### MEMORANDUM AND RECOMMENDATIONS

BOTLEY, United States Magistrate Judge.

Plaintiff Dorothy Donner ("Donner"), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the Social Security Administration's ("SSA") denial of her claim for disability insurance benefits provided by Title II of the Social Security Act. *See Plaintiff's Motion for Summary Judgment/Remand* (Docket Entry # 11). The Commissioner of the SSA ("Commissioner") urges that the decision to deny benefits be upheld. *See Defendant's Motion for Summary Judgment* (Docket Entry # 12). Donner contends the administrative law judge ("ALJ") wrongfully denied her benefits when the decision to deny was not supported by the proper legal standard in regard to the evaluation of her pain. Furthermore, Donner contends the ALJ did not have substantial evidence to support the finding that she was not disabled during October 23, 1997 through December 31, 1999. Lastly, Donner contends that improper legal standards were used to evaluate her residual functional capacity. Donner, therefore, maintains that the court should grant summary judgment in her favor, or in the alternative, remand the decision for further proceedings. The Commissioner, however, contends that the ALJ's decision was proper because the correct legal standards were utilized in the evaluation of Donner's pain. The Commissioner further asserts that the ALJ's finding of non-disability during October 23, 1997 through December 31, 1999 is sup-

ported by substantial evidence. The Commissioner, therefore urges this court to affirm her decision.

## THE FACTUAL AND PROCEDURAL BACKGROUND

### *The Pertinent Factual Background— The Medical History and Alleged Impairments*

Dorothy Donner was a fifty-one (51) year old (d.o.b. 11/28/48) female at the time of her administrative hearing with an 8th grade education, who has previous experience in a variety of unskilled jobs. (T.14,88). Her work experience included dishwashing, cashier/clerk, and cleaning/refilling vending machines. (T.29–31). Donner is married to George Donner, and continues to reside with her husband at this time. (T.88). She filed an application for disability insurance benefits on June 19, 1998 because of anxiety disorder, panic disorder without agoraphobia [2] and chronic back pain. (T.19–20, 88–90). Donner applied two times previous to this filing for disability insurance benefits. The first filing was on October 6, 1995, and the second filing was on August 18, 1997. She received denials on both claims, on June 18, 1996 and October 23, 1997, respectively. (T.13). Pursuant to 20 CFR § 404.988, both these claims became final due to lack of new evidence to support reopening either claim. Consequently, the dates of disability under consideration are October 24, 1997 through December 31, 1999.

Donner completed a disability report on June 19, 1998 when she filed for disability benefits, where she described her disability with an onset date of December 31, 1994. (T.102). Donner reported that she had a "degenerating back, glaucoma in the left eye that was leading toward blindness, and that her concentration was getting

worse on paper work and bills." She reported that her "lower back hurt constantly, and was getting worse as times passes." Also, she complained of " pain and muscle spasms in the legs." (T.102). Donner reported that Dr. Clemons was her physician and she saw him about every three (3) months. She also saw an ophthalmologist at the Columbus Eye Associates for her eye problems. (T.103). Donner described her daily activities as including cooking and washing dishes once or twice a day. She reported that her husband does most of the sweeping and mopping, because she is unable to bend or kneel without having pain. Donner reported minimal recreational activities because of her back pain and because of having to wear a back brace. (T.105). Her social contacts are also kept to a minimum because of her back pain. (T.105). She stated that she does drive an automobile, once or twice a week; however, only when absolutely necessary. (T.105).

On August 14, 1998, Donner completed the Texas Rehabilitation Commission's ("TRC") report and described her symptoms as "daily lower back pain, fatigue, weakness in legs, muscle spasms in her upper back, legs, and feet." She also included "shortness of breath, wheezing at night, occasional dizziness, nervousness and anxiety." (T.109). She stated that the lower back pain immobilizes her at times for forty-five (45) minutes to an hour or more. (T.109). She states the pain to her lower back is getting worse all the time. She is unable to rest at night and unable to do her chores at home. (T.109). She takes Tylenol Extra Strength four (4) times a day for the back pain, which she states " never stops the pain." When the lower back pain is severe, she applies an

---

**2.** Agoraphobia is an intense, irrational fear of open spaces, characterized by marked fear of being alone or of being in public places where

escape would be difficult or help might be unavailable.

ice pack. She takes Xanax daily for her nerves/anxiety and daily eye drops for her glaucoma. (T.109). She states she spends most of her day washing dishes, and cooking, which takes up most of her day due to frequent rest periods for her back. She stated most of the home care is done by her husband. (T.110). She reports her symptoms no longer allow her to sit, stand, or walk for any length of time. She is unable to bend, kneel or climb due to the back pain. However, she has the ability to read the newspaper and watch television occasionally, but her vision remains blurred. (T.111). She reports the only parts of her body not affected are her hands, hearing and her speech. (T.111). She is able to bathe herself, brush her teeth, comb her hair, shop, and ride a bus, if necessary. (T.113).

Donner's last gainful employment was five to six (5–6) months with Oak Restaurant as a dishwasher, which ended on December 31, 1994, because the company ceased operating, and because of back pain. (T.29–30). Donner testified that her back pain began in 1991. (T.31). She was treated by Dr. Tyler in 1991 and later by Dr. Patrick Clemons, when Dr. Tyler took a leave of absence. (T.31). Dr. Clemons submitted records reflecting treatment to Donner during the period of November 25, 1997 through June 16, 1999. (T.141–157).

Donner was seen by Dr. Clemons on November 25, 1997 and was given a diagnosis of hyperlipidemia after lab work was performed. She was treated with the medication Lipitor for high cholesterol and given instructions for diet and exercise. (T.155). On December 8, 1997, January 20, 1998 and February 24, 1998, Donner was not seen by Dr. Clemons, however, prescriptions for Xanax were prescribed over the telephone each time. (T.155). On March 23, 1998, Donner was seen and had lab work performed. She had a blood pressure of 130/72, a temperature of 96.6 F, and weight of 116 pounds. Her complaints were " toe cramps in both feet, with thoracic cramps, also low back pain like everything thru her rectum, will last up to an hour and then feels like legs are like jelly." (T.151). Dr. Clemons' examination revealed " mid to an upper thorax on left paraspinal muscles tender and in a spasm." Her lower back, L4–L5 was tender without muscle spasms. Her diagnosis' at that time were hyperlipidemia, chronic low back pain, etiology unknown, muscle cramps, and anxiety. (T.151). Medical intervention at that time consisted of Computerized Axial Tomography ("CT Scan") of the lumbosacral spine, a potassium blood level test, and medication consisting of Soma three (3) times a day for about two (2) weeks, and a prescription for Xanax. (T.151) The CT Scan of the lumbar spine was performed on March 24, 1998. The findings at level L3–4, revealed that her disc is normally contoured and shows no degenerative change and no arthritis. Level L4–5 of the scan revealed normal at that level. Level L5–S1 showed no abnormalities either. Consequently, the conclusion of the report was "unremarkable CT imaging of the lumbar spine." (T.152). On June 8, 1998, Donner contacted Dr. Clemons via the telephone for a prescription of Premarin. (T.151). Donner was next seen on June 22, 1998 for pharyngitis, allergic upper respiratory infection, and chronic obstructive pulmonary disease and was prescribed Combivent inhaler puffs four (4) times a day, Cedax 400mg for a week, Claritin five (5) mg every day and Hycodon syrup one (1) teaspoon a day. (T.150). On August 10, 1998, Donner contacted Dr. Clemons via the telephone for a prescription of Xanax. (T.150). On September 22, 1998, Donner saw Dr. Clemons for complaints of lower back pain, and anxiety. He also ordered lab work of liver function tests, and lipids for her hyperlipidemia. The examination

revealed her lumbar spine to be tender. He documented a diagnosis of lumber strain and anxiety, and prescribed Arthritic 50 mg two (2) times a day, and refills for her medication at Walmart. (T.149). On September 29, 1998, Donner telephoned Dr. Clemons to report that the "Arthritic medication makes her sick;" therefore, Dr. Clemons discontinued it and prescribed Darvocet–n–100 one (1) every four (4) hours for 3–4 days as needed. (T.149). On November 20, 1998, Dr. Clemons received a telephone call from Donner with complaints of sinusitis, sneezing, coughing and sore throat. He prescribed a Z-pak and Codinol one (1) teaspoon every four (4) hours as needed. (T.147). On November 30, 1998, Donner called Dr. Clemons to report she "had a real bad cough, she can't breathe and also had congestion." She was told she had to be seen by the physician to be treated. (T.147). When seen on November 30, 1998, her vital signs were a blood pressure of 142/88, temperature of 97.5 F, and her weight was 119.5 pounds. She was treated for bronchitis, sinusitis, pharyngitis, asthma, and chronic obstructive pulmonary disease and was prescribed medication. (T.147). Donner telephoned Dr. Clemons on December 4, 1998 and December 7, 1998 to report that she was still having problems as previously on November 30, 1998. Pursuant to the telephone call, Dr. Clemons prescribed a different medication. (T.146). On December 28, 1998, another prescription was filled via the telephone for Xanax. (T.145). On January 29, 1998, more medication was prescribed via the telephone for asthmatic bronchitis. (T.145). On February 1, 1999; March 1, 1999; April 7, 1999; and May 5, 1999, Xanax and Premarin were prescribed via the telephone to Donner's pharmacy. (T.143,144).

Donner had a rehabilitation commission disability evaluation on June 16, 1999 by William H. Pieratt III, D.O. Her complaint at the time of examination was "back prob-

lems." She reported that she has been having pain almost constantly since injuring her back in April of 1994, when she loaded a sixteen (16) gallon keg of beer while working in a convenience store. (T.139). She also reported that she gets partial relief from Tylenol and wearing a back brace. Allegations of leg weakness and pain that radiates into her buttocks and legs were also noted. (T.139). Dr. Pieratt noted Donner's previous medical history consisted of anxiety, dyslipidemia, glaucoma, questionable emphysema. Her previous surgical history was a hysterectomy with oopherectomy; excision of a benign mass in the right breast, and bilateral eye surgeries. (T.139). Her vital signs were blood pressure 130/80; temperature 98.6 F; pulse 88; respiration 16; and a weight of 124. Donner was noted to transfer from chair to table without significant difficulty. Her neurological examination revealed central nerves two (2) through twelve (12) to be intact. Motor activity was difficult to assess due to variable effort, no focal weakness, or atrophy was noted. Reflexes were physiologic and symmetric. Her gait was assessed as intact, however, inconsistent effort was noted. (T.139). The evaluation of her back revealed that she resisted straight leg raises while supine, but was able to achieve a ninety degree (90°) angle bilaterally in a seated position. No spasm, deformity or gross malignment was noted. The spine had eighty degree (80°) flexion at the waist. Donner was also able to perform side-bending bilaterally. (T.139–140). Dr. Pieratt's final impression after examination was that the chronic lower back pain was out of proportion to physical findings; she was also found to have chronic tobacco use and chronic alcoholism. (T.140). On June 16, 1999, an x-ray of the lumbar spine was ordered by Dr. Clemons, however, the x-ray was not available for Dr. Pieratt when the examination was performed.

(T.140). The x-ray of June 16, 1999 later revealed no fractures, but some very slight degenerative spurs at the superior end-plates of L4, L5, and L2. The conclusion from the radiologist, Dr. Michael E. Wilson, was "an unremarkable spine for the patient's age." (T.141).

Donner, at her initial visit to the Columbus Eye Associates on January 7, 1998, reported that a year prior to 1998, she was told that both eyes had increased intra-ocular pressure, and that there was no help for her vision. (T.189). She also reported a history of surgery on both eyes for strabismus [3] in 1963. She complained of bright lights causing pain in her eyes at night and that she could not see the television with her glasses. (T.189).

Donner was seen by the Columbus Eye Associates from January 7, 1998 through May 26, 1999 for eye care. She had six (6) documented visits during that time. She was diagnosed with Rieger's Syndrome [4] secondary to glaucoma. Her medical intervention for January 7, 1998 through May 26, 1999 was various eye drops to minimize the pressure causing glaucoma to her eyes. (T.184–189; 196,197). Her vision on January 7, 1998 corrected was 20/25 in the right eye and 20/counting fingers only in the left eye. (T.189). On May 26, 1999 her vision remained the same as it was on January 7, 1998. (T.184).

An ophthalmological consult done on February 18, 1999 by the TRC determined Donner's diagnoses to be intra-ocular hypertension in the right eye, and anterior cleavage syndrome [5], cataract and glaucoma to the left eye. (T.180). The prognosis for her future eyesight was that the right eye is expected to remain the same and the left eye is not expected to improve. (T.180).

A TRC case assessment was done by Dr. Frank H. Gregg, on March 2, 1999. The diagnoses were chronic lower back pain, Rieger's Syndrome, and ocular hypertension. (T.178). She was given a rating of non-severe impairmets. (T. 178). The report noted the examination done on March 23, 1998 that revealed thoracic and lumbar tenderness with spasms. The CT Scan of the lumbar spine was within normal limits. The conclusion was that Donner should be able to perform most ordinary tasks with monocular vision. (T. 178).

A psychiatric evaluation was done on January 4, 1999, by Dr. Greg Maksymowicz for a social security disability determination. (T.190). Donner's history of nerve problems date back to age twelve (12). She was first prescribed Librium for her nerves, and later in 1995 she was prescribed Xanax by Dr. Patrick. She reported an overdose of her tranquilizers around 1993, but denied suicidal ideation currently. (T.190). She reported that when her "nerves are bad, she cannot drive or even walk out of the house." She described her episodes of anxiety where she feels "tightness in the chest and she gets confused and can't find anything." (T.190). She also reported that these attacks occur two (2) to three (3) times a week. She gets relief from taking Xanax. Donner was diagnosed with generalized anxiety disorder, and panic disorder without agoraphobia. (T.192). Dr. Maksy-

---

**3.** Strabismus is a deviation of the eye that the patient cannot recover. The visual axes assume a position relative to each other different from that required by the physiological conditions.

**4.** Rieger's Syndrome is a developmental anomaly consisting of posterior embryotoxon, hypoplasia of iris stroma, and usually glaucoma.

**5.** Anterior Cleavage Syndromeis a term for several types of mesenchymal dysgenesis affecting neural crest derivatives in the iris, trabecula, and cornea.

mowiczs' exam revealed that Donner appears to have good concentration and mental ability to attend to task, although during an anxiety attack her concentration would be diminished. (T. 192). He also gave her a Global Assessment of Functioning [6] ("GAF") rating of 57. (T192). Donner was given a fair prognosis. Dr. Maksymowicz opined that if she were to receive more aggressive treatment for her anxiety and panic disorder symptoms, her level of emotional functioning would likely improve. (T.192). Lastly, he also opined that Donner has the ability to manage benefits in her own interest and that she understands the meaning of filing for benefits. (T.193).

### The Procedural Background–The Administrative Proceedings and Exhaustion of Administrative Remedies

Donner filed an application with the SSA on June 6, 1998, seeking disability benefits, claiming an inability to work since December 31, 1994, due to a degenerating back. (T.102). The SSA denied benefits on March 16, 1999. (T.59). Donner filed for reconsideration on May 13, 1999 (T. 64), but was denied benefits on July 7, 1999. (T.66). A request for a hearing by the ALJ was filed on August 19, 1999 (T.70), and was conducted on February 7, 2000. (T.81). On May 11, 2000, the ALJ determined that Donner was not entitled to disability benefits as outlined by the SSA. (T.21). On June 27, 2000, Donner filed a Request for Review of the Hearing Decision/Order with the Appeals Council. (T.9). The Appeals Council on December 21, 2000, denied the request for review; therefore, the ALJ's decision became the final decision of the Commissioner. (T.4). Donner has, therefore, exhausted all administrative remedies prior to seeking judicial review; and accordingly, the Court has proper authority, conferred statutorily, with which to commence its review [7] See Sims v. Apfel, 530 U.S. 103, 106, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); see also 42 U.S.C. § 1383(c)(3) and 20 C.F.R. § 404.981 and/or 20 C.F.R. § 416 (2000), as applicable.

### ANALYSES

### The Standards of Review—The Motion for Summary Judgment

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter, thereby, alleviating the necessity, in this instance, of reversing and vacating the administrative decision or of a remand for further administrative proceedings. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c); see also Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999); Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.1998); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir.1993). A factual dispute is "genuine" when a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also PYCA Industries, Inc. v. Harrison County Waste Water Management District, 177 F.3d 351, 361 (5th Cir. 1999); Crowe v. Henry, 115 F.3d 294, 296 (5th Cir.1997). The substantive law dictates which facts are "material."

---

**6.** Global Assessment of Functioning is a rating of psychiatric status from 1 (lowest level of functioning) to 100 (highest level) assessing psychological, social, and occupational functioning widely used in studies of treatment effectiveness.

**7.** This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act and Rule 72, Fed. R.Civ.P. See Order of Referral (Entry # 4).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. In instances as here, where both parties have moved for summary judgment, as to each party's motion, all inferences on summary judgment must be drawn in favor of the non-moving party, to the extent that if there appears to be some evidentiary support for the disputed allegations, that motion must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247, 106 S.Ct. 2505; *McAllister v. R.T.C.,* 201 F.3d 570, 574 (5th Cir.2000). Once summary judgment is properly supported, however, the burden shifts from the movant to the adverse party, who may not rest on mere allegations or denials, but must set forth specific and supported material facts, of significant probative value, to preclude summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Assoc. of Machinists and Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.,* 199 F.3d 796, 798 (5th Cir.2000); *Union Planters National Leasing, Inc. v. Woods,* 687 F.2d 117, 119 (5th Cir.1982). Only upon showing that there remain no issues as to any material facts, which may be gleaned from reviewing the pleadings, answer to interrogatories, admissions, and affidavits on file, will summary judgment be allowed. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th cir.1994) (en banc).

### A. The Administrative Determination

█ A review of the Commissioner's decision to deny benefits is relegated to a determination of whether substantial evidence in the record supports the decision, and further, whether proper legal standards were used in evaluating the evidence. *Boyd v. Apfel,* 239 F.3d 698 (5th Cir.2001); *Loza v. Apfel,* 219 F.3d 378 389 (2000); *Estate of Morris v. Shalala,* 207 F.3d 744, 745 (5th Cir.2000); *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999); *Jones v. Apfel,* 174 F.3d 692 693 (5th Cir.

1999). "Substantial evidence" means that which is more than a mere scintilla but less than a preponderance; and, it is evidence of such relevance that a reasonable mind would accept it as adequate to support the conclusion reached. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995)(per curiam). The Court is not, however, allowed to reweigh the evidence, retry the facts *de novo,* or substitute its judgment for that of the Commissioner. *Id.; see also Randall v. Sullivan,* 956 F.2d 105, 113, reh. denied (5th Cir.1992); and, any finding that there is no substantial evidence to support the Commissioner's determination is appropriate only if no credible evidentiary choices or medical findings exist to support the decision, *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Kinash v. Callahan,* 129 F.3d 736 738 (5th Cir.1997); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995), thereby, compelling a "[j]udicial review [that is] deferential without being so obsequious as to be meaningless." *Brown v. Apfel,* 192 F.3d at 496; *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986).

### B. Determining the Existence of an Eligible Disability

To determine the existence of an eligible disability there must, initially, be an evaluation of whether the claimant was unable to perform substantial gainful work existing in the national economy because of a medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted, or which can be expected to last, for a continuous period of not less than twelve (12) consecutive months. 42 U.S.C. §§ 416(I), 423(d)(1)(a); *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 801, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999);

*McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir.1999); *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), reh. denied, cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A five-step process is utilized by the ALJ to determine whether a claimant qualifies for disability benefits. See 20 C.F.R. § 404.1520(b)-(f)(2000); *Loza v. Apfel,* 219 F.3d at 390; *Leggett v. Chater,* 67 F.3d at 563. The claimant has the burden of establishing the first four steps of the five-step sequential process by establishing that he has a severe impairment, which prevents him from performing his past relevant work. If, at any step of the analyses, the ALJ finds that the claimant is or is not disabled, the inquiry is terminated. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir.2001). In this five-step process, the ALJ must consider:

1) whether the claimant is currently engaged in substantial gainful activity, as an individual who is currently engaged in substantial gainful activity will not be found disabled, regardless of the medical findings;

2) whether the claimant has a severe impairment;

3) whether the claimant meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, as such an individual will be considered without consideration of vocational factors;

4) *if an individual is capable of performing the work he or she has done in the past, a finding of not disabled must be made;* and,

5) if an individual's impairment precludes him or her from performing his or her past work, other factors, including age, education, past work experience and residual functional capacity must be considered to determine if there is any work in the na-

tional economy that the individual can perform.

20 C.F.R. § 404.1520(b)-(f); *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); *see also Brown v. Apfel,* 192 F.3d at 498; *Leggett v. Chater,* 67 F.3d at 566.

In the 5th step, the burden is on the Commissioner to show that the claimant can perform relevant work. If the Commissioner meets this burden, the claimant must then prove that she cannot in fact perform the work suggested. *Boyd* 239 F.3d at 705, (quoting *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir.1991)). A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Id.* at 705, *(quoting Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir.1987)).

## DISCUSSION

### A. The ALJ Utilized the Proper Legal Standard to Establish Non-disability

Under this five-step evaluation to establish disability as outlined in 20 C.F.R. § 404.1520(b)-(f), the ALJ made the following findings relevant to Donner's disability status. First, the ALJ determined that Donner met the first requisite to the process. Donner did not work in any capacity that resulted in any substantial gainful activity after October 24, 1997. (T.13–15). Second, the ALJ determined that Donner did not have a disability that classified as a severe disability according to 20 C.F.R. § 404.1520(b)-(f), (T.15). In order to classify an anxiety disorder disability as severe, Donner has to meet the requirements in both A and B; or A and C of § 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (2001).

The medical examiner, Dr. John Murray reviewed the medical records and findings presented by the treating physicians.

(T.42). He found that Donner did not satisfy the requirements of criteria A or B of § 12.06 (*supra*). (T.42). He described severity as a relative term, noting that Donner's disorder was not severe as some cases are to support her claim as severe. (T.42). As outlined in § 12.06(a) (*supra*), she was unable to produce the required medical documentation of three (3) of the four (4) needed symptoms to accompany her general diagnosis of anxiety. She was also unable to medically document a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation. Additionally, she was unable to medically document the severe panic attacks manifested by sudden unpredictable onset of impending doom occurring on the average of at least once a week, nor did she have recurrent obsessions or compulsions which area source of marked distress medically documented, and lastly, she did not have documented evidence of recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. Consequently, the ALJ was correct that Donner did not meet the criteria of A § 12.06 (*supra*).

He also opined, that her diagnoses of generalized anxiety and panic disorder did not meet the requirements set out in B criteria of the listing, 12.06 Anxiety Related Disorders 20 C.F.R. Part 404, Subpart P, Appendix 1, either. He pointed out that she did not have any persistent agoraphobia, fear of being in public or around other people, which is sometimes a feature of panic disorder. He also noted that the disorder has recurrent attacks manifested by sudden, unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week, of which Donner has no documented evidence to support the findings.

Severity is described according to § 12.00(c), 20 C.F.R. Part 404, Subpart P, Appendix 1, Mental Disorders, as being measured according to the functional limitations imposed by the medically determinable mental impairment(s). The four criteria used in part B listings are activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. Activities of daily living ("ADL") include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using the telephone and directories, and using a post office. Donner's record is replete with documentation that she reports an inability to perform her ADL's. (T.33,34,36,38,39,-105,110,111). However, she testified, that she is able to drive a car once a week to pick up her husband's check. (T.33). She reported that she drives to town, which is about fifty (50) miles away from her home once a week to pay bills, grocery shop, and buy toiletries for about four (4) hours. (T.34,105). She also testified that she is able to wash dishes, and cook twice daily, sweep and mop minimally. (T.36). She concluded by saying that all of these activities are often interrupted by pain in her lower back. (T.36,192). When Donner completed her August 14, 1998 rehabilitation report, she reported inconsistencies about her ability to function. On the one hand, she reported that she was only able to sit, stand, or walk for very short periods of time. She was also unable to bend, kneel or climb, or reach overhead. (T.111). However, on the other hand, she is able to bathe herself, fix her own hair and select her own clothing without any assistance. (T.112). She is also able to cook, pay her bills, ride a bus, and shop. (T.113). It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability sta-

tus. *Reyes v. Sullivan,* 915 F.2d 151 (5th Cir.1990). Donner reports her social functions as minimal. However, she reports that she visits with a friend once a week for one (1) to two (2) hours. She visits with her daughters two (2) to three (3) times a week for about two (2) hours, and she visits with her sister one (1) to four (4) times a year. (T.105,192). She also visits with her neighbors by telephone on occasion. (T.105, 192). Donner reports that when she has an anxiety attack, and severe lower back pain, she is unable to concentrate or do anything. (T.39,102,109). Donner was treated by Dr. Clemons from November 25, 1997 through June 1999, and no documented observable clinical findings of an anxiety attack were ever documented as being observed by him. He merely prescribed Xanax for her complaints of bad nerves. (T.144,145,149,150,-151,155). Therefore, there is no medical record reflecting the severity of her attacks. No where in the record is documentation by her physician reflecting her inability to function outside her home because of her anxiety. (T.144,145,150,151,-155). While the opinions of Donner's treating physicians are "entitled to great weight," the ALJ can decrease reliance on the treating physician testimony for good cause. Good cause for abandoning the treating physician rule includes "disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical diagnostic techniques, or otherwise supported by evidence." *Leggett v. Chater,* 67 F.3d at 566. She was seen by Dr. Greg Maksymowicz for a psychiatric evaluation for a social security disability determination on January 4, 1999. He documented that she appears to have good concentration and mental ability to attend to task although during an anxiety attack he would imagine her concentration would be diminished. (T.192). Persistence and pace were not assessed because Donner is currently unemployed. Decompensation is assessed by medical documentation of increased symptoms and or increase in dosage of medication used to alleviate symptoms. Donner's medical records do not reflect any change in her symptoms or alteration of her medication to control her symptoms. (T.143–157).

Donner also failed to meet Criteria C of § 12.06, which is a complete inability to function independently outside the area of one's home. 20 C.F.R. Part 404, Subpart P, Appendix 1. Donner's complaint of lower back pain is documented twice in her medical records from Dr. Clemons. On her March 23, 1998 visit, she described an excruciating pain in her lower back that lasted for about an hour. The examination by Dr. Clemons revealed mid to upper thorax paraspinal muscle tenderness and some spasms. However, the lower back was found to be tender, without spasms. (T.151). The examination was inconsistent with her subjective complaints. Dr. Clemons ordered a CT Scan of her lumbar spine. (T.151). The results of the March 24, 1998 scan were that no abnormalities were seen and was concluded as unremarkable CT imaging of the lumbar spine. (T.152). The only other reference to back pain during the lengthy time she was seen by Dr. Clemons was on September 22, 1998. The lumbar spine was noted to have some tenderness but no spasms. (T.149). The rehabilitation commission on June 16, 1999 authorized an examination and radiologic tests on Donner by Dr. Pieratt. (T.139). He completed a full examination of Donner which included all systems. (T.139–140). He noted that her motor activity and gait were difficult to assess due to variable effort on her behalf. (T.139). He also noted that she transferred from chair to table to floor without significant difficulty. He concluded that Donner's chronic lower back pain was out of proportion to the physical findings. (T.139).

The x-ray of her lumbar spine remained unremarkable for the patient's age. He reported that no objective evidence of physical limitations that would restrict sitting, standing, moving about, hearing, speaking, of lifting, handling, or carrying objects. (T.140).

Donner's lower back pain can not stand as a severe impairment because it does not meet the criteria of § 1.00(a)(b), Musculoskeletal System, 20 C.F.R. Part 404, Subpart P, Appendix 1. The statute is clear that Donner's pain must be associated with relevant abnormal signs or laboratory findings. Also, the evaluation of musculoskeletal impairments should be supported where applicable by detailed descriptions of the joints, including ranges of motion, condition of the musculature, sensory of reflex changes, circulatory deficits, and x-ray abnormalities. Furthermore, the physical examination findings must be determined on the basis of objective observations during the examination and not simply a report of the individual's allegation.

Donner's records were reviewed by Dr. Frank Gregg on March 2,1999 for the rehabilitation commission. Donner's diagnoses were glaucoma and a cataract in her left eye and intra ocular hypertension in the right eye. (T.180). He concluded after review of the records that her right eye vision field is not severely restricted and that with her left eye vision field she is able to count fingers, and that she should be able to perform most ordinary tasks with monocular vision. (T.178). Hence, her diagnosis was not given a severe rating that qualifies for disability benefits.

■ The third step was based on the review of the development of the record, the ALJ's decision to find that Donner does not have a severe impairment or a combination of impairments that meet the described impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 is correct. There is substantial evidence to support this opinion. The x-rays, her own physician reports, and the combination of all the rehabilitation physicians reports and finally her own written reports, corroborate the finding. Written reports by physicians who have examined the claimant setting forth medical data are admissible in evidence in a disability hearing and may constitute evidence supportive of findings by hearing examiners. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir.1995).

■ Donner contends that the ALJ's assessment of her residual function was incorrect and should be given further consideration. However, the ALJ's determination in the fourth step that Donner had the residual functional capacity to perform her past employment or similar light work was correct. Residual functional capacity is a determination of the particular type of work the claimant can still do despite their limitations. The determination was made by the ALJ when he assessed all the evidence provided to him from the treating and examining physicians, from Donner herself, and the objective medical records. 20 C.F.R. § 404.1545 (2001). The type of jobs performed by Donner in her past work history ranged from medium unskilled to light unskilled jobs. The ALJ determined that Donner had the residual functional capacity to perform light unskilled jobs. Light work is defined in the regulations as involving, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...[and] a good deal of walking or standing, or ...sitting most of the time with some pushing and pulling of arm or leg controls." There was never any indication in any of the medical reports

submitted by Dr. Clemons that Donner was not capable of performing light work. In fact, he never documented any type of limitation for lifting, carrying of objects, or whether or not she should not sit or stand or walk for any period of time. However, in the examination done by Dr. Pieratt, he documented that he saw no limitations of sitting, standing, moving, hearing, speaking, or lifting, handling or carrying objects. In fact, he noted how she transferred from the table to floor without significant difficulty. (T.139). He also highlighted the fact it was difficult to assess her motor activity due to variable effort on her behalf. (T.139). Her nervous system was intact, she had no focal weakness, atrophy, or spasm noted, and her reflexes were symmetrical. Donner's brief noted that Dr. McSinlis made note of her back pain and leg pain that kept her from returning to work, however, the fact is that he did not make this diagnosis. In fact, he merely repeated what was told to him by Donner. (T.43). The next page of the transcript speaks in detail of the evaluation of Donner's back. (T.44). He concluded that in reference to her back pain, that the record reflects complaints of back pain, however no medical objective findings to support the complaints and also, there is no evidence supportive of prescribed limitations by her physicians. (T.44). The medical records and x-rays provide substantial evidentiary support that there is not any objective finding that would support Donner's complaints for her functional limitations. Donner testified that she is able to cook, and wash dishes daily, and that she is able to drive a car, make a bed, and sometimes mop and sweep. She testified that it may take her awhile to complete the tasks, however she is able to function. Donner also testified that she is able to sit and watch television. (T.36–38). The ALJ's finding that she has the functional capacity to perform light work is supported by substantial objective medical ev-

idence and is inconsistent with Donner's subjective complaints. 20 C.F.R. § 416.946, provides that the residual functional capacity will be determined by the ALJ or the Appeals Council and 20 C.F.R. § 416.961 provides that the ALJ must determine if the claimant can do any other work as well as previous work.. Dr. Murray testified that given the totality of all the evidence, that Donner should at least be able to perform light work Finally, the burden of proof is on Donner to provide evidence that she is unable to work, not the other way around. She has failed to provide the necessary medical objective evidence to substantiate her case that she lacks the residual function capacity to perform light work. Therefore, the ALJ's assessment was correct and must stand in light of the thorough review, findings, and burden of proof.

**B. The ALJ did not Err in the Evaluation of Donner's Pain and Substantial Evidence was available to Support the Findings**

The Fifth Circuit uses two tests for disabling pain. The first test is based on 42 U.S.C. § 423(d)(5)(A)2001, which states in pertinent part, the following: "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment...which could reasonably be expected to produce the pain ... alleged." *Anthony v. Sullivan,* 954 F.2d 289, 296 (5th Cir.1992); *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir.1990). The second test states that, for pain to be deemed disabling, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Wren v. Sullivan,* 925 F.2d 123, 128–129 (5th Cir.1991). When applying the facts of Donner's case to the tests utilized by 5th Circuit, the ALJ was correct in his evaluation of her

pain. Donner's subjective complaints and physiological findings are inconsistent with the results of disabling pain. Substantial evidence as outlined by the Fifth Circuit was available to the ALJ to substantiate his finding, such as no muscle atrophy, and no adverse neurological test results. *Hollis v. Bowen,* 837 F.2d 1378, 1384 (5th Cir.1988); see also, *Harrell v. Bowen,* 862 F.2d 471, 480 (5th Cir.1988). Also, lumbar muscle spasm has never been documented by her physician. (T.149,151). Dr. Murray testified that a spasm is what the examiner finds when examining the patient, however Donner's examination never revealed any lumbar spasms only lumbar tenderness, which once again is completely subjective. (T.47,149,151). The only time spasm was documented by her physician was in the thoracic region, not lumbar. (149,151). Other factors include weight loss due to loss of appetite from incessant pain, the use of assistive devices, prolonged bedrest, or adverse neurological signs. *Fraga v. Bowen,* 810 F.2d 1296, 1302–1303 (5th Cir.1987). Donner did not have weight loss, to the contrary, she gained weight or had stable weight throughout the time she was seen by Dr. Clemons. She weighed 116 pounds on March 23, 1998, on November 30,1998 she weighed 119.5 pounds, and on June 16, 1999, she weighed 124 pounds. (T.139,147,115). She testified that she wears a back brace, however could not remember who prescribed it and there is no further documentation about the necessity of a back brace by Dr. Clemons. (T.34,35). She was never prescribed prolonged bedrest or any assistive devices by Dr. Clemons. Lastly, Donner does not have any evidence documented by objective medical findings such as x-rays, CT scans, or any laboratory findings that would change the outcome. When the second part of the test is applied, Donner can not support her complaints with changing therapeutic regimes implemented by her physician to resolve her complaints of lower back pain other than taking Tylenol Extra Strength three (3) tablets four (4) times a day. (T.38). Finally, there were no hospitalizations for constant unremitting lower back pain, or documentation by Dr. Clemons that she even had this type of pain. After review of the record, the Commissioner was correct to affirm the ALJ's decision that there was substantial evidence to support his decision and the correct legal stands were applied. Donner's pain does not meet the standards that the 5th Circuit recognizes as disabling pain.

## CONCLUSIONS

Following a review of the entire record, though the findings are in summary format, the evidence however from the x-rays, her physician, the rehabilitation physicians that examined Donner, such as the psychiatrist, medical physician, and ophthalmologist and even Donner herself all provide substantial evidence to substantiate the Commissioner's findings. It is recommended that the Commissioner's findings, be affirmed as the findings comport with applicable legal standards and the substantial evidence and, accordingly, there has not been presented in this matter, a genuine issue necessitating the reversal of the Commissioner's decision. In accordance with 42 U.S.C. § 405(g) it is therefore,

**RECOMMENDED** that Donner's Motion for Summary Judgment (Entry # 11) be **DENIED**. Further, it is

**RECOMMENDED** that the Commissioner's Motion for Summary Judgment (Entry # 12) be **GRANTED**.

The Clerk shall file this Memorandum and Recommendation and provide all parties with a true copy. Failure to file written objections to the proposed findings and recommendations contained in this report

within ten (10) days of the entry of this Memorandum and Recommendations, may bar an aggrieved party, except upon ground of plain error, from attacking the proposed factual findings and legal conclusions, on appeal. *See Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000); *Douglass v. United Services Automobile Assoc.,* 79 F.3d 1415, 1424 (5th Cir.1996)(en banc); *See also Crawford v. Falcon Drilling Co.,* 131 F.3d 1120, 1123–24 (5th Cir.1997); and, 42 U.S.C. § 405(g). Feb. 28, 2002.